# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: <br><br> STEVE HETRICK and <br> SVETLANA V. HETRICK, <br><br> Debtors. | Case No. 06-11154-RGM <br> (Chapter 7) |
| SALIME EL-YACOUBI, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> STEVE HETRICK, *et al.*, <br><br> Defendants. | Adv. Proc. No. 07-1062 |

**MEMORANDUM OPINION**

THIS CASE was before the court on the plaintiffs' motions for summary judgment as to Count I of the complaint, and motion for default judgment as to the remaining counts of the complaint. Count I is asserted against all defendants and seeks to quiet title to real property in Washington, D.C. The remaining counts of the complaint, which seek relief only against the debtors, are for slander of title, trespass, and non-dischargeability of debt as to co-debtor Steve Hetrick.

**Background**

Prior to 1982, Muyassar Hassan El Yacoubi was the sole owner of certain real property located at 2158 California Street, N.W., Washington, DC (the "Property"), in fee simple. By deed dated March 23, 1982, and recorded April 16, 1982 among the land records of the District of Columbia as Instrument No. 09956 (the "March 1982 Deed"), Muyassar Hassan El Yacoubi

1

conveyed her interest in the Property to three of her siblings, Salim-Hasan El Yacoubi, Salem-Hasan El Yacoubi, and Hassan H. El Yacoubi, as tenants in common.[1]

One of the co-owners, Salim-Hasan El Yacoubi, died on June 24, 1994. Plaintiff Salime El-Yacoubi, the deceased's nephew, was appointed personal representative of the estate of Salim-Hasan El Yacoubi by the Probate Division of the D.C. Superior Court on November 21, 2005.

Another co-owner, Hassan H. El Yacoubi, executed a power of attorney on October 23, 2003, and recorded January 29, 2004 among the land records of the District of Columbia as Instrument No. 2004013516, appointing his son, plaintiff Salime El-Yacoubi, as his attorney-in-fact for the Property. Hassan H. El Yacoubi passed away in December 2004. Plaintiff Salime El-Yacoubi was appointed personal representative of the estate of Hassan H. El Yacoubi by the Probate Division of the D.C. Superior Court on May 16, 2005.

The remaining co-owner, Salem-Hasan El Yacoubi, and Salime El-Yacoubi, as the duly-appointed personal representative of the estates of Salim-Hasan El Yacoubi and Hassan H. El Yacoubi, brought this adversary proceeding to quiet title to the Property.

Steve Hedrick, co-debtor and co-defendant herein, purported to acquire title to the Property by a Warranty Deed dated November 22, 2004, and recorded among the land records of the District of Columbia as Instrument No. 2004159998 (the "November 2004 Deed"). The November 2004 Deed contained the purported signatures of the three co-owners of the Property under the March 1982 Deed: Salim-Hasan El Yacoubi, Salem-Hasan El Yacoubi, and Hassan H. El Yacoubi. The signatures on the November 2004 Deed were dated November 22, 2004.

---

[1] The grantees under the March 1982 Deed, Salim-Hasan El Yacoubi, Salem-Hasan El Yacoubi, and Hassan H. El Yacoubi, and co-plaintiff Salime El-Yacoubi as the personal representative of the estates of Salim-Hasan El Yacoubi and Hassan H. El Yacoubi, are collectively referred to herein as the El-Yacoubis.

One of the signatories, Salim-Hasan El Yacoubi had been dead for more than ten years on November 22, 2004. Another of the signatories, Salem-Hasan El Yacoubi, was in Dubai, United Arab Emirates, for the entire month of November 2004. The third signatory, Hassan H. El Yacoubi, was gravely ill on November 22, 2004. Plaintiff Salime El-Yacoubi, as attorney-in-fact for Hassan H. El Yacoubi, did not sign the November 2004 Deed. Neither of the living signatories, Salem-Hasan or Hassan H. El Yacoubi, authorized any other person to sign the November 2004 Deed on their behalf. None of the purported signatories on the November 2004 Deed signed it or authorized another to sign it on his behalf, and the signatures are forgeries.

All the signatures were notarized by a Beverly Jenkins, whose notarization attested that the three signatories personally appeared before her to execute the November 2004 Deed. Ms. Jenkins indicated that her notary commission expired on September 30, 2006. The notarizations are not accompanied by a seal indicating the notary's jurisdiction. Records from bodies that commission notaries in Maryland, Virginia, and the District of Columbia show that they have not commissioned a notary public by the name of Beverly Jenkins with a commission expiration date of September 30, 2006. Moreover, it is impossible for Ms. Jenkins to have notarized the signature of the deceased Salim-Hasan El Yacoubi, and extremely implausible that Ms. Jenkins notarized the signature of Salem-Hasan El Yacoubi, who was in the United Arab Emirates at the time.

Mr. Hetrick testified at his §341 creditors' meeting and at a subsequent Rule 2004 examination that he had never met any of the alleged sellers of the Property and that he received the November 2004 Deed from Michael Brooker, who purported to represent the El-Yacoubis. Mr. Brooker was convicted in federal court in the District of Columbia for crimes involving identity theft and the fraudulent transfer of real property. Although the face of the November 2004 Deed recited

3

the consideration paid for the Property to be $60,000, Mr. Hetrick actually paid $137,000 for the Property. These funds were paid by certified check to the United States District Court for the District of Columbia. The check was paid over to that court in satisfaction of court-ordered restitution owed by Mr. Brooker. The El-Yacoubis did not receive any consideration for the Property from Mr. Hetrick, Mr. Brooker, or any other party.

On November 22, 2004, Mr. Hetrick also executed a Real Property Recordation and Transfer Tax Form FP 7/C (the "Form FP 7/C"). The Form FP 7/C puts the assessed tax value of the Property at $477,980.00. Salim-Hasan El Yacoubi, who was deceased on November 22, 2004, purportedly signed the Form FP 7/C on behalf of the grantors. Mr. Hetrick signed the Form FP 7/C as the grantee. Their signatures were notarized by the same Beverly Jenkins who notarized the November 2004 Deed. Salim-Hasan El Yacoubi's signature on the Form FP 7/C and the notarizations are forgeries because Salim-Hasan El Yacoubi was deceased at the time he allegedly signed the Form FP 7/C and because Mr. Hetrick testified he has never met a Beverly Jenkins and that he did not sign the Form FP 7/C in her presence.

Subsequently, Mr. Hetrick transferred the Property to himself and his wife, co-debtor and co-defendant Svetlana Hetrick, by special warranty deed dated January 13, 2005 and recorded in the land records of the District of Columbia as Instrument No. 2005009801 (the "January 2005 Deed"). The January 2005 Deed recites consideration for this transfer as zero dollars ($0.00). Mr. Hetrick did not receive any consideration from Mrs. Hetrick.

After jointly taking title in the property by way of the January 2005 Deed, the debtors used the Property as collateral to secure a $1.5 million loan from 1st American Mortgage, Inc. In connection with this transaction, the Hetricks executed a Deed of Trust dated January 13, 2005 in

4

favor of 1st American Mortgage, which was recorded in the land records of the District of Columbia as Instrument No. 2005009802 (the "January 2005 Deed of Trust"). 1st American Mortgage subsequently assigned all of its beneficial interest under the January 2005 Deed of Trust to co-defendant Tysons Financial, LLC, by way of a Corporate Assignment of Deed of Trust, which was recorded on February 3, 2005 in the land records of the District of Columbia as Instrument No. 2005016281 (the "Assignment of Deed of Trust").

The Hetricks made no significant improvements to the Property after they allegedly acquired it. In fact, they actively sought a third-party purchaser for the Property shortly after settlement with 1st American Mortgage. In July 2006, after they had filed a quiet title action in D.C. Superior Court, the El-Yacoubis learned that the Hetricks were not paying property taxes on the Property and that the Property was scheduled to be sold pursuant to a tax lien. In order to protect their interests in the Property, the El-Yacoubis paid $30,350.54 in taxes to the D.C. government on July 7, 2006.

# I
# Summary Judgment

## A. *Procedural History*

The El-Yacoubis filed their complaint in this adversary proceeding on May 23, 2007 against the debtors, the chapter 7 trustee, and Tysons Financial LLC, the assignee under the Assignment of Deed of Trust. The complaint alleges four claims: Count I seeks to quiet title in the Property and was asserted against all the defendants; Counts II and III assert claims for slander of title and trespass against the debtors; and Count IV seeks a declaration of non-dischargeability of debt as to only Mr. Hetrick. The complaint and summons were served by first-class mail on all the defendants. The El-Yacoubis filed certificates of service to this effect on June 12, 2007. Of the four defendants, only

5

Tysons Financial, LLC answered the complaint. By failing to answer the complaint or otherwise respond, the remaining three defendants have defaulted. The El-Yacoubis filed notices of default against Mr. Hetrick on August 2, 2007.

Before the expiration of discovery, the El-Yacoubis filed the instant motion for summary judgment as to Count I of the Complaint. As with the complaint, the Hetricks and the chapter 7 trustee did not respond and have defaulted. Tysons Financial did respond and sought additional time to take discovery under Fed.R.Civ.P. 56(f), made applicable by Fed.R.Bankr.P. 7056. The court, over the objection of the El-Yacoubis, granted Tysons Financial additional time to take discovery in aid of its response to the summary judgment motion. At the conclusion of this discovery period, Tysons Financial responded to the motion for summary judgment and indicated that there was no genuine issue as to any fact relied upon in the El-Yacoubis' summary judgment motion.

### B. *Standard*

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing that there exists no genuine issue of material fact in the record, at which time the burden shifts to the non-moving party to come forward with admissible facts showing a genuine issue for trial. *See* Fed.R.Civ.P. 56(e). Where the non-moving party concedes that there is no genuine issue of material fact, the court looks only to whether, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. If so, the movant is entitled to summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Ausherman v. Bank of Am. Corp.*, 352 F.3d 896, 899 (4th Cir. 2003).

The El-Yacoubis have asserted undisputed facts in support of their motion for summary judgment. Three of the defendants have failed to respond to the summary judgment motion, and the fourth defendant, Tysons Financial, conceded an absence of a genuine issue of material fact. Where the facts are undisputed and the court is presented with a purely legal question, the case is ripe for resolution on summary judgment.

### C. *Discussion*

As a result of the January 1982 Deed, the three owners of the Property as tenants in common were Salim-Hasan El Yacoubi, Salem-Hasan El Yacoubi, and Hassan H. El Yacoubi. There have been no facts presented indicating that any of them conveyed their interests in the Property or authorized Mr. Brooker to act on their behalf with respect to the Property. It is clear that the November 2004 Deed by which Mr. Hetrick purportedly took title to the Property is, in fact, a forgery. Among other things, it contains the purported signature of Salim-Hasan El Yacoubi, who died more than a decade before the November 2004 Deed was executed. The other two purported signatories were either traveling abroad or gravely ill at the time of the execution of the November 2004 Deed. Beverly Jenkins, the person who notarized the deed, has not been located and the evidence presented supports the conclusion that she is not commissioned as a notary in Maryland, Virginia, or the District of Columbia. She could not have possibly notarized the signature of the deceased Salim-Hasan El Yacoubi. Furthermore, Mr. Hetrick has testified that he never met Ms. Jenkins and that he did not, contrary to her attestation, sign any of the documents relating to the

November 2004 Deed in her presence.

Finally, the surrounding circumstances support the conclusion that the November 2004 Deed is a forgery. There is no evidence that Mr. Brooker, who procured the Property for Mr. Hetrick, was the El-Yacoubis' agent. While Mr. Hetrick paid $137,000 for the Property, tax records put its assessed value at more than three times that amount. Moreover, Mr. Hetrick did not pay the purchase price to the El-Yacoubis or their agent, but rather to the United States District Court for the District of Columbia in satisfaction of Mr. Brooker's court-ordered restitution. The El-Yacoubis received no money from the sale of the Property and spend their own money to prevent a tax foreclosure sale while Mr. Hetrick possessed the Property. These facts and the uncontradicted evidence of the forged signatures on the November 2004 Deed lead the court to the conclusion that the November 2004 Deed is a forgery.

Under the law of the District of Columbia,[2] "a forged deed cannot validly transfer property and . . . even a bona fide purchaser takes nothing from that conveyance." *M.M. & G., Inc. v. Jackson*, 612 A.2d 186, 191 (D.C. 1992). As a forgery, the November 2004 Deed is void and failed to transfer title of the Property to Mr. Hetrick. Likewise, the forgery taints the subsequent transactions entered into by the Mr. Hetrick and his successors with respect to the Property. *See Martin v. Carter*, 400 A.2d 326, 330 (D.C. 1979) (holding that as between an innocent defrauded owner and subsequent purchasers, the risk of forgery falls on the latter because they are able "to protect themselves by purchase of title insurance from companies able to calculate where losses will

---

[2] The parties do not contest that the applicable law is D.C. law. Federal courts, including bankruptcy courts, apply the conflict of laws rules of the forum in which they sit. *See Roanoke Cement Co. v. Falk Corp.*, 413 F.3d 431, 433 (4th Cir. 2005); *Sanner v. Poli (In re Poli)*, 298 B.R. 557, 561 (Bankr.E.D.Va. 2003). Under Virginia's conflict of laws rules, "real estate is exclusively subject to the laws and jurisdiction of the courts of the nation or state in which it is located." *Hotchkiss v. Middlekauf*, 96 Va. 649, 32 S.E. 36, 38 (1899). As the Property is located in the District of Columbia, that jurisdiction's law controls the outcome of this case.

8

fall."). As a forgery, no subsequent party can claim title through the November 2004 Deed. The end result is that the November 2004 Deed, the January 2005 Deed, the January 2005 Deed of Trust, and the Assignment of Deed of Trust are all void and unenforceable. Title to the Property is properly quieted in the El-Yacoubis as the rightful owners under the March 1982 Deed free and clear of the transfers and encumbrances discussed above.

## II
## Default Judgment

The El-Yacoubis have also filed a motion for default judgment against Steve Hetrick as to all counts of the complaint.[3] Because the court concludes above that the El-Yacoubis are entitled to summary judgment on Count I as to all the defendants, including Mr. Hetrick, the court need not discuss the availability of default judgment on Count I. The remaining counts of the complaint are asserted only against the debtors and not Tysons Financial or the chapter 7 trustee. In Counts II and III, the El-Yacoubis seek a money judgment against the debtors for slander of title and trespass. They request in Count IV that any judgment against Mr. Hetrick on Counts II or III be deemed non-dischargeable under Bankruptcy Code §523(a)(6) as a willful or malicious injury.

### A. *Standard*

Default judgment requires the bankruptcy court to satisfy itself of three items. First, service of the complaint upon the allegedly defaulting party must be made in accordance with the Federal Rules of Bankruptcy Procedure. *See Hamlett v. Amsouth Bank (In re Hamlett)*, 322 F.3d 342, 345-47

---

[3] While Counts II and III of the complaint are plead against both debtors, the El-Yacoubis' memorandum in support of their motion for default judgment explicitly states that they are seeking default judgment against only Mr. Hetrick.

9

(4th Cir. 2003) (vacating default judgment where the plaintiff did not properly effect service in accordance with the Rules). Second, the party against whom default is sought must have "failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise." Fed.R.Civ.P. 55(a), made applicable by Fed.R.Bankr.P. 7055. Lastly, even if service is properly made and the party defaults, a default judgment is appropriate only if the court determines that the well-pleaded allegations of the movant's complaint support the relief sought. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

### B. *Discussion*

The first two requirements for default judgment are satisfied in this case. The El-Yacoubis filed certificates of service showing proper personal service upon Mr. Hetrick. *See* Fed.R.Civ.P. 4(e)(2), made applicable by Fed.R.Bankr.P. 7004(a)(1). An answer was due from Mr. Hetrick not later than July 2, 2007. No answer or other responsive pleading was filed, and the debtors are in default. On the El-Yacoubis' motion, the clerk of the court entered a default against Mr. Hetrick pursuant to Federal Rule of Civil Procedure 55(a).

The remaining question is whether the El-Yacoubis have plead sufficient facts in support of default judgment on Counts II, III, and IV of the complaint.

### 1. Count II – Slander of Title

The second count of the complaint asserts slander of title. Under D.C. law, to prevail on a claim for slander of title, the plaintiff must show "that the words are false and were malicious, and that the damage alleged naturally and reasonably resulted; and, if special damage is alleged, it must be claimed and facts must be alleged on which it may be sustained." *Herzog v. Kronman*, 82 F.2d

859, 860 (D.C. Cir. 1936); *see also Conservative Club of Wash. v. Finkelstein*, 738 F. Supp. 6, 13-15 (D.D.C. 1990).

The complaint pleads sufficient facts for the court to grant default judgment on the El-Yacoubis' slander of title claim. As discussed above, at the time Mr. Hetrick recorded his deed to the Property, the Property belonged to the El-Yacoubis. The complaint alleges that Mr. Hetrick knew or should have known that the November 2004 Deed was fraudulent because he participated in its creation and recordation, establishing both the falsity and malice elements of slander of title. *See* Compl. ¶¶62-66. It also alleges that the fraudulent conveyance of the Property to Mr. Hetrick, and his subsequent conveyances of and encumbrances on the Property, deprived the El-Yacoubis of the ability to sell, possess, or encumber the Property. *Id.* ¶ 67. Special damages of two kinds are properly plead: (1) the El-Yacoubis' inability to sell, possess, or encumber the Property throughout the entirety of the period when the debtors purportedly owned the Property; and (2) the El-Yacoubis' attorneys' fees incurred in righting the slander of title to the Property. *Id.* ¶ 67, 70-71. As a result, the El-Yacoubis are entitled to default judgment on their slander of title claim.

### 2. Count III – Trespass

Count III of the complaint asserts a claim for trespass to land. The El-Yacoubis assert that the debtors physically came onto the Property, erected signage thereon, and changed the locks. The El-Yacoubis also claim that the debtors asserted ownership and dominion over the Property. The complaint also asserts that the El-Yacoubis were in possession of the Property at the time of the debtors' acts, and that all of these acts were intentional. Compl. ¶¶75-76. The El-Yacoubis claim that the debtors' trespass is ongoing. *Id.* ¶76.

D.C. law recognizes the tort of trespass to land, which requires "the intentional intrusion of a person or thing upon property that invades the disrupts the owner's exclusive possession of that property." *Daily v. Exxon Corp.*, 930 F. Supp. 1, 2 (D.D.C. 1996) (citing *Carrigan v. Purkhiser*, 466 A.2d 1243, 1243 (D.C. 1983)). In shaping its law of trespass, the D.C. Court of Appeals has looked favorably to the Restatement (Second) of Torts, *see, e.g.*, *Carrigan*, 466 A.2d at 1243-44, which requires two elements: (1) an intentional act; and (2) entering, remaining on, or failing to remove an item from the land of another. *See* Restatement (Second) of Torts §158 (1965).[4]

On this standard, the El-Yacoubis have plead sufficient facts in the complaint to support a default judgment on the trespass claim. The complaint alleges that the debtors intentionally entered upon and remained on the Property and took steps to change the property by erecting signage and changing the locks. Damages, including the inability to possess the property, have been alleged. Compl. ¶79. The El-Yacoubis are entitled to default judgment based on these allegations.

### 3. Count IV – Non-dischargeability of Debt under Bankruptcy Code §523(a)(6)

The El-Yacoubis also seek to declare as non-dischargeable under Bankruptcy Code §523(a)(6) the debt arising from the judgments against Mr. Hetrick for slander of title and trespass. Having established that they have a valid claim arising prepetition against Mr. Hetrick, the El-Yacoubis will be able to enforce this claim only if it survives any bankruptcy discharge that Mr. Hetrick is granted. The El-Yacoubis assert that these debts are non-dischargeable under §523(a)(6), which provides an exception to discharge of any debt for "willful and malicious injury by the debtor

---

[4] "One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally (a) enters land in the possession of the other, or causes a thing or a third person to do so, or (b) remains on the land, or (c) fails to remove from the land a thing which he is under a duty to remove." Restatement (Second) of Torts §158 (1965).

to another entity or to the property of another entity." Bankruptcy Code §523(a)(6).

Willfulness and maliciousness are separate components of §523(a)(6), both of which must be satisfied in order for a debt to be excepted from discharge under that provision. *See* 4 Collier on Bankruptcy ¶523.12[2] at 523-92.3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2007). The Supreme Court has held that willfulness means an intent to cause the injury and not merely an intent to cause the act. *See Kawaauhau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974, 140 L.Ed.2d 90 (1998). The malice requirement is met when a debtor's injurious act is committed "deliberately and intentionally in knowing disregard of the rights of another." *First Nat'l Bank of Md. v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir. 1995). Maliciousness has been defined by the Fourth Circuit to arise even when a debtor "bears no subjective ill will toward, and does not specifically intend to injure, his creditor." *Id.* Therefore, to succeed in their non-dischargeability claim, the El-Yacoubis must demonstrate that Mr. Hetrick intended to cause the injuries they sustained and that he acted with knowing disregard of their rights.

As to the slander of title claim asserted in Count II of the complaint, the El-Yacoubis have plead sufficient facts for a default judgment declaring the debt to be non-dischargeable. The El-Yacoubis' complaint asserts that Mr. Hetrick knew or should have known the November 2004 Deed to be fraudulent. Thus, by recording the November 2004 Deed, and recording the subsequent documents that depend on the November 2004 Deed, Mr. Hetrick intended to deny the El-Yacoubis the benefits of ownership and possession of the Property. Compl. ¶83. Because he knew or should have known the November 2004 Deed was fraudulent, Mr. Hetrick's recordation of that deed and the subsequent documents demonstrate that he acted deliberately and intentionally in disregard of the El-Yacoubis' rights to the Property. *Id.* ¶¶ 67-68.

Likewise, the El-Yacoubis have met the burden for default judgment on their non-dischargeability claim as to the trespass claim. Again, the El-Yacoubis have plead sufficient facts to show that Mr. Hetrick knew or should have known the November 2004 Deed to be fraudulent. Knowing that the Property belonged to another, Mr. Hetrick's trespass on the Property was done with an intent to prevent the true owners of the Property from enjoying exclusive possession thereof. Compl. ¶83. Because he knew or should have known the transaction to be fraudulent, Mr. Hetrick's actions were done intentionally and deliberately with knowing disregard of the El-Yacoubi's rights to the Property. *Id.* at ¶¶75-77.

The court therefore concludes that the El-Yacoubis are entitled to default judgment on their non-dischargeability claim regarding Counts II and III of the complaint. As a result, a trial is necessary to fix damages under these two counts of the complaint.

### III
### Conclusion

The court will grant the El-Yacoubis' motion for summary judgment as to Count I of the complaint, and will grant the El-Yacoubis' motion for default judgment as to Mr. Hetrick as to the remaining counts of the complaint.

Alexandria, Virginia
November 16, 2007

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

Copy electronically to:

David Charles Masselli
Robert O. Tyler

Russell Scott Drazin

Copy mailed to:

Steve Hetrick
8612 Old Dominion Drive
McLean, Virginia 22102

Svetlana V. Hetrick
8612 Old Dominion Drive
McLean, Virginia 22102

13783